Alex R. Straus, SBN 321366
alex@whitfieldbryson.com
**WHITFIELD BRYSON LLP**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
*Plaintiff's Attorneys*

*Additional attorneys on signature page*

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Patricia Sultanis, *individually and on behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP,<br><br>Defendant. | CASE NO.   3:21-cv-162<br><br>**CLASS ACTION COMPLAINT** |

## CLASS ACTION COMPLAINT

Plaintiff, Patricia Sultanis, individually and on behalf of all other similarly situated persons, by her undersigned attorneys, brings this Class Action Complaint against Defendants, Champion Petfoods USA Inc. and Champion Petfoods LP, (collectively referred to herein as "Champion" or "Defendant"), alleging the following based upon personal knowledge, and, as to all other matters, alleges, upon information and belief and investigation of her counsel, as follows:

### NATURE OF THE ACTION

1.     This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased Defendant's Orijen and Acana

petfood marketed and labeled as made from "free-run" poultry (hereinafter the "Products") raised under conditions that are more humane than those of standard industrial farms.[1]

2.       Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on their label, the Products, which claim to be made from "free-run" poultry (the "Free-Run Poultry Claims"), actually are made from factory-farmed birds raised under standard industrial conditions—confined in crowded barns without outdoor access.

3.       As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been, and continue to be, harmed by purchasing the Products under false pretenses and paying more for it than they otherwise would have, if they would have purchased it at all.

4.       Plaintiff and the Classes bring claims for consumer fraud and unjust enrichment and seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

**PARTIES**

5.       Plaintiff Patricia Sultanis is a citizen of the State of California residing in the City of Walnut Creek and is a member of the Classes defined herein. She purchased the Products for her own use during the four years preceding the filing of this Complaint and most recently on July 24, 2017.

---

[1] The Products at issue in this Complaint:  Acana Duck & Pear Formula Dry Dog Food; Acana Duck & Pear Freeze-Dried Dog Treats; Acana Duck & Pumpkin Recipe with Wholesome Grains Dry Dog Food; Acana Feast Formula Dry Dog Food; Acana Free-Run Poultry Formula Dry Dog Food; Acana Free-Run Poultry Recipe with Wholesome Grains Dry Dog Food; Acana Grasslands Dry Cat Food; Acana Grasslands Dry Dog Food; Acana Homestead Harvest Dry Cat Food; Acana Indoor Entree Dry Cat Food; Acana Kentucky Farmlands with Wholesome Grains Dry Dog Food; Acana Light & Fit Formula Dry Dog Food; Acana Meadowland Dry Dog Food; Acana Meadowlands Dry Cat Food; Acana Paleo Formula Dry Dog Food; Acana Puppy & Junior Formula Dry Dog Food; Acana Turkey & Greens Formula Dry Dog Food; Acana Turkey & Greens Freeze-Dried Dog Treats; Acana Turkey & Greens Freeze-Dried Dog Treats; Acana Turkey & Pumpkin Recipe Dry Dog Food; Orijen Cat & Kitten Dry Cat Food; Orijen Fit & Trim Dry Cat Food; Orijen Fit & Trim Dry Dog Food; Orijen Free-Run Duck Freeze-Dried Dog Treats; Orijen Original Dry Dog Food; Orijen Original Freeze-Dried Cat Treats; Orijen Original Freeze-Dried Dog Food; Orijen Original Freeze-Dried Dog Treats; Orijen Puppy Dry Dog Food; Orijen Puppy Large Dry Dog Food; Orijen Senior Dry Dog Food; Orijen Tundra Dry Cat Food; Orijen Tundra Dry Dog Food; Orijen Tundra Freeze-Dried Cat Treats; Orijen Tundra Freeze-Dried Dog Food; and Orijen Tundra Freeze-Dried Dog Treats. Discovery may reveal that additional Champion brands and products should be included within the scope of the allegations in this Complaint, and Plaintiff reserves the right to add such products.

Plaintiff and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint. Plaintiff and members of the Classes would not have purchased the Products had they been accurately labeled.

6.      Defendant Champion Petfoods USA Inc. is incorporated in Delaware and has its headquarters and principal place of business in Kentucky.

7.      Champion Petfoods LP is a Canadian limited partnership with its headquarters and principal place of business in Alberta, Canada. Defendant Champion Petfoods LP wholly owns, operates, and/or controls Defendant Champion Petfoods USA Inc.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of a different state than most Class Members.

9.      The Court has personal jurisdiction over Defendants because Defendants regularly conduct business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Products purchased by Plaintiff.

10.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendants.

## FACTUAL ALLEGATIONS

### *Champion Falsely Marketed the Products as Made from "Free-Run" Poultry*

11.     Champion produces, processes, markets, labels and distributes the Products throughout the U.S.

12.     The Products are available online and in a variety of retail outlets, including pet stores such Petco.

13.     Champion aggressively marketed the Products to consumers as being made from "free-run" poultry.

14.     For example, the Acana "Free-Run Poultry Formula" and "Free-Run Poultry Recipe" Products (shown below) are labeled "made with fresh free-run chicken, turkey & cage free eggs:"



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17    15.    The packaging of the Products also includes chicken icons with the descriptor "free-
18  run chicken:"
19
20
21
22
23



24
25
26
27
28

5

16.     Similarly, the packaging of the Acana "+Wholesome Grains Free-Run Poultry Recipe" dog food shows chickens outdoors on grass:



17.     Champion's websites include additional Free-Run Poultry Claims.

18.     For example, the Acana website states: "'Raised under the highest standards for animal care and food safety by people we know and trust, on family-run American farms, our free-run poultry and cage-free eggs are nourishing, natural, and antibiotic free:'"

## FREE-RUN POULTRY AND CAGE-FREE EGGS
DELIVERED FRESH OR RAW

Raised under the highest standards for animal care and food safety by people we know and trust, on family-run American farms, our free-run poultry and cage-free eggs are nourishing, natural, and antibiotic free.

19.     The website includes this image and text describing Champion's "free-run" chickens:



Our chicken is raised free-run by people we know and trust, like Todd of Clark Farms in Lexington, Kentucky. Free of artificial hormones and antibiotics, our chickens are sourced from federally inspected facilities, contain no preservatives, and are bursting with goodness and taste.

20.     This farmer, whom Champion purportedly "knows and trusts" as Todd of Clark Farms, is actually Greg Hefton, a contract grower for Tyson Foods—the largest poultry produced in the United States.[2]

21.     Simply put, with the Free-Run Poultry Claims, Champion leads consumers to believe that the chickens used in the Products are raised in better, more humane conditions than typical chickens grown for meat.

22.     Relatedly, with the Free-Run Poultry Claims, Champion leads consumers to believe that the chickens used in the Products have access to the outdoors.

23.     The claim ""free-run"" for poultry raised for meat is not defined by any government regulation in the United States. Nevertheless, if the ""'free-run"" claim were used on poultry products for human consumption, it would require approval by the United States Department of Agriculture's

---

[2] Gary Thornton, *Top 10 US chicken producers grow in new directions,* WATTAgNet.com (Jan. 2019), https://www.wattagnet.com/articles/25893-top---us-chicken-producers-grow-in-new-directions.

Food Safety and Inspection Service ("PSIS").[3]  PSIS reviews animal-raising claims on meat and poultry product labels to verify that they are not false or misleading.

24.    For poultry-product label claims synonymous with "free-range" (e.g., "free roaming"), PSIS requires documentation that the birds had "continuous, free access to the outside throughout their normal growing cycle."[4]

25.    To reasonable consumers, including Plaintiff and Class Members, "free-run" is synonymous with "free-range."

26.    This is especially true where, as here, Champion has promoted that association by posting pictures of chickens walking in the grass outside on the packaging of the Products as well as in marketing and advertising of the Products.

27.    Customer reviews of the Products reveal that consumers specifically believe that Champion's "Free-Run Poultry" is, in fact, "free-range."[5]

28.    For example, one consumer on Amazon stated, "Free range chicken is the meat in this."[6]

29.    Thus, Champion's Free-Run Poultry Claims are intended to lead consumers into believing that "free-run" poultry comes from birds who had free access to the outdoors and that were raised under conditions that significantly exceeded industrywide animal welfare standards.

---

[3] USDA Food Safety and Inspection Service, *Labeling Guideline on Documentation Needed to Substantiate Animal Raising Claims for Label Submissions* (Dec. 2019), https://www.fsis.usda.gov/wps/wcrn/connect/6fe3cd56- 6809-4239-b7a2-bccb82a30588/RaisingClairns.pdf?MOD=AJPERES.
[4] *Id*.
[5] *See, e.g.,* chey44, *Chewy Customer Review,* Chewy (Aug 2, 2016), https://chewy.com/acana-heritage-free-run- poultry/product-reviews/121056?reviewSort=NEWEST&reviewFilter=ALL_STARS&pageNurnber=25.
[6] A. Williams, *Amazon Customer Review,* Amazon (Feb. 28, 2020), https://www.amazon.com/gp/custorner-reviews/R2XEQB9A30DXPP/ref=crn_er_getr_d_rvw_ttl?ie=UTF8&ASIN=B0835BGQS2.

30.     Champion directs the Free-Run Poultry Claims to consumers, like Plaintiff and the members of the Classes, and Champion intends that Plaintiff and members of the Classes read and rely on its representations.

31.     However, contrary to these representations, the Products are not made from birds who had free access to the outdoors and that were raised under conditions that significantly exceeded industrywide animal welfare standards, leaving Plaintiff and Members of the Classes having paid a premium for Products that failed to provide the promised benefits.

32.     In truth, the poultry that goes into Champion's products, including the Products, is from birds raised entirely indoors in the typical crowded and inhumane conditions of factory poultry farms.

33.     Factory-farmed chickens, like those who become ingredients in Champion's Products, are raised entirely indoors in large warehouse-like facilities. The birds never step foot outside.

34.     As shown in the images below, these grow houses are generally large, windowless, rectangular buildings, hundreds of feet long, with litter- and manure-covered dirt floors:



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11



12     35.     Champion's suppliers, such as Tyson Foods, raise and kill chickens using a process

13 that prioritizes cost efficiency and maximum output. The standards for this process are set by the

14 National Chicken Council ("NCC"), the primary U.S. chicken industry trade association. The NCC's

15 guidelines are set by industry members, such as Tyson. These guidelines serve as the bare minimum

16 nationwide welfare standards for chickens raised for meat. Moreover, the NCC guidelines-which

17 Tyson utilizes[7]- explicitly allow for practices that severely restrict birds' freedom of movement. For

18 instance, NCC standards allow severely cramped conditions[8] and the manipulation of the growth rate

19 of the birds to grow unnaturally and painfully large.[9]

20
21
22
23

24 [7] *Humane Handling,* Tyson Foods, https://www.tysonfoods.com/sustainability/animal-well-beingl}nunane- handling (last visited June 25, 2020).

25 [8] National Chicken Council, *NATIONAL CHICKEN COUNCIL ANIMAL WELFARE GUIDELINES AND AUDIT CHECKLIST FOR      BROILERS,* (Feb. 2017),

26 https://www.nationalchickencouncil.org/wpcontent/uploads/2018/07/NCC-Animal-Welfare-Guidelines_Broilers_July2018.pdf, at 12.

27 [9] ASPCA, *A Growing Problem: Selective Breeding in the Chicken Industry: The Case for Slower Growth,*

28 https://www.aspca.org/sites/default/files/chix_white_paper_nov2015_lores.pdf (last visited Aug. 6, 2020).

CLASS ACTION COMPLAINT

36.     As chickens grow to market weight, the allotted space per bird does not give them enough room to perform natural behaviors, such as stretching and flapping their wings, preening, or turning around.[10]

37.     Confined in barren, crowded sheds, chickens have no opportunity to explore, forage, roost, or form normal social groups.  These conditions lead to abnormal behaviors, such as feather pecking and cannibalism.[11]

38.     Conventionally raised commercial chickens, like those used in Champion's products, have been selectively bred for rapid growth to reach market weight.  An average broiler chicken in 1920 reached 2.2 pounds in 16 weeks.  In 2017, broilers used by Champion's suppliers could reach "6 to 8 pounds" at "less than 10 weeks old."[12]

39.     The faster growth is a severe welfare problem, causing leg disorders, ruptured tendons, weakened immune systems, and other painful conditions.  Several studies have shown, for example, that the fast-growing Cobb breeds of chickens used by Champion's suppliers are prone to skeletal deformities and associated health conditions.[13]

[10] Animal Welfare Institute, *The Welfare of Chickens Raised for Meat,* https://awionline.org/sites/default/files/uploads/legacy-uploads/docum ents/Web-WelfareofChickensRaisedforMeatfactsheet-1279568551-document-22539.pdf (last visited Aug. 6, 2020).

[11] The Humane Society of the United States, *An HSUS Report: The Welfare of Animals in the Turkey Industry,* https://www.humanesociety.org/sites/default/files/docs/hsus-report-turkey-welfare. pdf (last visited Aug. 6, 2020).

[12] Investor Fact Book - Fiscal Year 2017, Tyson Foods 19 (April 25, 2018), http://q4live.s22.clientfiles.s3- website-us-east-1.arnazonaws.com/l04708849/files/doc_factbook/Tyson-Foods-FY17-Fact-Book-(rev- 042518). pdf.

[13] *See, e.g.,* E. Gocsik et al., *Exploring the Economic Potential of Reducing Broiler Lameness,* 85 Brit. Poultry Sci. 337 (2017); I. Dinev et al., *Comparative Clinical and Morphological Studies on the Incidence of Tibial Dyschondroplasia as a Cause of Lameness in Three Commercial Lines of Broiler Chickens,* 21 J. Applied Poultry Research 637 (2012).

CLASS ACTION COMPLAINT

40.     According to University of Bristol professor emeritus John Webster, fast-growing "broiler" chickens, such as those used in the Products, spend the last 20% of their lives in chronic pain. They do not move around much, because movement of their joints is too painful.[14]

41.     Contrary to Champion's representations, the animals used in the Products are not "free run" or "raised under the highest standards for animal care," but instead are raised under minimal standards with no access to the outdoors.

42.     In fact, Champion was recently sued by Organic Consumers Association, a nonprofit corporation, for the deceptive marketing and advertising at issue in this Complaint.[15]

43.     Accordingly, on information and belief, the chicken used in the Products is made from birds raised entirely indoors in the typical crowded and inhumane conditions of factory poultry farms.

44.     As such, Champion's Free-Run Poultry claims are false and/or tend to mislead consumers, including Plaintiff and Class Members, about a material fact.

### *The Free-Run Poultry Representation Is On The Front Of Every Product*

45.     To ensure uniformity, Defendant represented on the front of each and every one of the Productss' label that it contained "Free-Run Poultry".

46.     In fact, on each of the Products, Defendant made the "Free-Run Poultry" representation in large front on the front of the product to ensure the consumer saw and relied upon it.

47.     There is no variation in this representation across the Products that would render a reasonable consumer's understanding of "Free-Run Poultry" any differently from one product to another.

48.     Defendant knows this and this is precisely why "Free-Run Poultry" is proudly touted on each of the Products' labeling.

---

[14] James Erlichman, The Meat Factory, Guardian (Oct. 1991).
[15] *See Animal Equality v. Champion Petfoods USA Inc., et al.*, Case No. 2020CA 003279 (Sup. Ct. D.C.).

*The Free-Run Poultry Claims are Material to Consumers*

49.     The use of terms such "free-run poultry" are powerful statements that are important to consumers.

50.     Consumers care about animal welfare. Many consumers prefer and are willing to pay more for products that they believe come from humanely treated animals, as several consumer studies have documented.

51.     A 2015 Consumer Reports survey found that consumers deem it important that food not be produced via standard factory-farm methods. For example, 84% of food shoppers said that it was "important" or "very important" to provide better living conditions for animals.[16]

52.     According to a 2013 survey conducted by the American Humane Association, 89% of consumers were very concerned about farm animal welfare, and 74% stated that they were willing to pay more for humanely raised meat products.[17]

53.     About three-quarters of respondents to a 2018 survey conducted for the National Chicken Council said they were concerned about how chickens are raised for meat.[18]

54.     A 2018 study published in the journal *Animals* found that consumers are willing to pay more for chicken products from humanely treated birds and further notes that consumers are willing to pay more for "free-range" products.[19]

---

[16] Consumer Reports Survey Group, *Natural and Antibiotics Label Survey: 2015 Nationally Representative Phone Survey*, https://foodpolitics. comlwp-contentluploadslConsum er-Reports-Natural-Food-Labels-Survey-Report.pdf.

[17] Am. Humane Ass'n, *Humane Heartland Farm Animal Welfare Survey* (2013), https://www.am ericanhum ane.org/app/uploads/2013/08/humane-heartland- farm-animals-survey-results.pdf.

[18] National Chicken Council, *US Chicken Consumption Report* (July 2018), http://www.wattagnet.com/ext/resources/lmages-by-m onth-year/18 _07/US-Chicken- Consum ption_FINAL _Report_240718.pptx.

[19] C. Victor Spain et al., *Are They Buying It? United States Consumers' Changing Attitudes Toward More Humanely Raised Meat, Eggs, and Dairy*, 8 Animals 128 (2018).

55.     Food industry experts have identified that consumer preferences regarding human food products are increasingly "carrying over to pet foods."[20]

56.     A 2017 survey found that "9 out of 10 Americans say it's important that the pet food they purchase provides transparency of ingredients."[21]

### Plaintiff was Deceived by Champion's Free-Run Poultry Claims

57.     Plaintiff was herself a victim of Champion's mislabeling and false advertising of the Products.

58.     On July 24, 2017 Plaintiff purchased the Products for consumption by her pets at Chewy.com.

59.     Specifically, Plaintiff purchased the ACANA Meadowland Regional Formula Grain-Free Dry Cat & Kitten Food in the 4 lb bag quantity for $20.99 plus tax.

60.     On each occasion before purchasing the Products, Plaintiff reviewed the Free-Run Poultry Claims. Plaintiff purchased the Products believing these claims to be true, as stated on the packaging and in Champion's marketing and advertising materials described herein.

61.     Plaintiff would not have purchased the Products had she known that they did not provide the promised benefits, i.e., "free-run poultry," or at the very least she would not have purchased the Products at the price Champion charged. Plaintiff did not receive the benefit of her bargain when she purchased the Products because the representations and warranties on the Products were misleading and untrue at the time of her purchase.

---

[20] Jennifer Semple, *The "real" customer,* Food Business News (J\lay 14, 2018) https://www.foodbusinessnews.net/articles/1_l 8l 8-the-real-customer. This trend has been identified by the marketing industry as the "humanization" of pet food. *The Humanization of Pet Food,* Nielsen (J\larch 2016), https://www.nielsen.com/wp-content/uploads/sites/3/2019/04/hum_anization-of-pet-food-report-mar-2016-1._pdf.
[21] 9 of 10 pet owners want pet food ingredient transparency, Pet Food Industry (April 10, 2017) https://www.petfoodindustry.com/articles/6390-of-_1 0-pet-owners-want-pet-food-ingredient-transparency.

62.   Plaintiff is in the same Class as all other consumers who purchased Champion's Products during the relevant time period.  Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Products. Plaintiff and Class Members would have purchased other petfood products, if any at all, if they had not been deceived by the misleading and deceptive labeling, marketing, and advertising of the product by Defendant.

## CLASS ACTION ALLEGATIONS

63.   Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

64.   Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23.  The class definition(s) may depend on the information obtained through discovery.  Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

**National Class:** All persons within the United States who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").

**California Sub-Class:** All persons in California who purchased the Products for personal consumption from the beginning of any applicable limitations period through the date of class certification (the "California Sub-Class").

65.   Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, Defendant's officers, directors, and employees, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

66.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

67.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

68.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff, but may be ascertained from Defendant's books and records. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

69.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes. Such common questions of law or fact include, but are not limited to, the following:

a.      Whether the Products are accurately labeled;

b.      Whether Defendant had a reasonable basis for making the Free-Run Poultry Claims;

c.      Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive;

e.      Whether Defendant's actions violate the state consumer fraud statutes invoked below;

f.      Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

g.      Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members;

h.      Whether Plaintiff and Class Members are entitled to injunctive relief.

70.      Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

71.      **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

72.      **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

73.      **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

74.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised health or medicinal benefits.

75.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

**COUNT 1**
**VIOLATION OF THE STATE CONSUMER FRAUD ACTS**
**(ON BEHALF OF THE CONSUMER FRAUD MULTI-STATE CLASS)**

76.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

77.     The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

78.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

79.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to making the Free-Run Poultry Claims on the label of the Products and in the course of Defendant's advertising and marketing of the Products with no reasonable basis to do so and when, in fact, those claims are not true.

80.     Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

81.     As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

82.     In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

**COUNT 2**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the California Sub-Class)**

83.     Plaintiff brings this count on behalf of herself and the Class and repeats and re-alleges all previous paragraphs, as if fully included herein.

84.     Defendant marketed, sold, and/or distributed the Products, and Plaintiff and Class Members purchased the Products.

85.     Defendant represented in their marketing, advertising, and promotion of the Products that their product contained "Free-Run Chicken".

86.     Defendant made these representations to induce Plaintiff and Class Members to purchase the Products, which did in fact induce Plaintiff and other Class Members to purchase this product.

87.     Accordingly, Defendants' representations that the Products contained "Free-Run Chicken" became part of the basis of the bargain between Defendant and Plaintiff and other Class Members.

88.     The Products did not conform to Defendants' representations and warranties regarding "Free-Run Chicken" because at all relevant times the bags of the Products contained non free run chicken.

89.     As a direct and proximate result of Defendant's breaches of its express warranties and their failure to conform to the Products' express representations, Plaintiff and members of the Class have been damaged. Plaintiff and Class Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be. In addition, Plaintiff and Class Members paid a premium for a product that did not conform to the Defendant's warranties.

**COUNT 3**
**CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CLRA")**
**(On Behalf of the California Sub-Class)**

90.     Plaintiff brings this count on behalf of himself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

91.     The CLRA prohibits deceptive practices by any business that provides goods, property, or services primarily for personal, family, or household purposes.

92.     Plaintiff and the Class members are "consumers" as defined in California Civil Code § 1761(d).

93.     The Products are "goods" as defined in California Civil Code § 1761(a).

94.     Defendant is a "person" as defined in California Civil Code § 1761(c).

95.    Plaintiff's and the Class members' purchases of the Products are "transactions" as defined in California Civil Code § 1761(e).

96.    Defendant's representations and omissions concerning the quality, benefits and effectiveness of the Products were false and/or misleading as alleged herein.

97.    Defendant's false or misleading representations and omissions were such that a reasonable consumer would attach importance to them in determining his or her purchasing decision.

98.    Defendant's false and misleading representations and omissions were made to the entire Class as they were prominently displayed on the packaging of every bag of the Products dog food.

99.    Defendant knew or should have known their representations and omissions were material and were likely to mislead consumers, including Plaintiff and the Class.

100.    Defendant's practices, acts, and course of conduct in marketing and selling the Products Products were and are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment.

101.    Defendant's false and misleading representations and omissions were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiff and Class members, and violated and continue to violate the following sections of the CLRA:

   a.    § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

   b.    § 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another;

   c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

   d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it was not.

102.     Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

103.     Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

104.     Defendant's wrongful business practices were a direct and proximate cause of actual harm to Plaintiff and to each Class member.

105.     Pursuant to the provisions of Cal. Civ. Code § 1782(a), as of the date of filing, Plaintiff has not given the required notice to Defendant regarding its unlawful conduct and violation of the CLRA. After the filing of this complaint, Plaintiff will give the requisite notice to Defendant and if after 30 days no response has been received, Plaintiff will seek leave to amend this allegation to seek restitution and actual damages.

106.     Pursuant to California Civil Code § 1780, Plaintiff seeks injunctive relief, their reasonable attorneys' fees and costs, and any other relief that the Court deems proper.

**COUNT 4**
**CALIFORNIA FALSE ADVERTISING LAW ("FAL")**
**(On Behalf of the California Sub-Class)**

107.     Plaintiff brings this count on behalf of herself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

108.     The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

109.   It also is unlawful under the FAL to make or disseminate any advertisement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

110.   As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant relating to the Products were and are deceptive and misleading.

111.   As alleged herein, the advertisements, labeling, website, policies, acts, and practices of Defendant misled consumers acting reasonably as to Defendant's representations about quality, benefits, and ingredients of the Products.

112.   Plaintiff suffered injury-in-fact as a result of Defendant's actions as set forth herein because, as a reasonable consumer, he purchased the Products in reliance on Defendant's false and misleading labeling claims concerning the Products' qualities, benefits, and ingredients.

113.   Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known was untrue, and because Defendant omitted material information from their advertising.

114.   Defendant profited from sale of the falsely and deceptively advertised Products to reasonable but unwary consumers including Plaintiff and the Class, and Defendant has thereby been unjustly enriched.

115.   As a result, Plaintiff, the Class, and the general public are entitled to restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**COUNT 5**
**CALIFORNIA UNFAIR COMPETITION LAW ("UCL")**
**(On Behalf of the California Sub-Class)**

116.   Plaintiff brings this count on behalf of herself and the California Subclass and repeats and re-alleges all previous paragraphs, as if fully included herein.

117.   The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Defendant's acts, omissions, misrepresentations, practices, and non-disclosures as alleged herein constitute business acts and practices.

118.   Defendant's acts, omissions, misrepresentations, practices and non-disclosures as alleged herein constitute unlawful, unfair, and fraudulent business practices in that they have the capacity to deceive reasonable consumers, including Plaintiff and the Class, as to the benefits and ingredients of the Products Products.

119.   <u>Unlawful</u>: The acts alleged herein are "unlawful" under the UCL in that they violate at least: (a) the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq*.; (b) the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.; and (c) California's Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code § 109875, *et seq*.

120.   <u>Unfair</u>: Defendant's conduct with respect to the labeling, advertising, and sale of The Products was "unfair" because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims, including Plaintiff and the Class.

    a.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the False Advertising Law and Consumers Legal Remedies Act.

    b.   Defendant's conduct with respect to the labeling, advertising, and sale of the Products was and is unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

c.   Reasonable consumers, including Plaintiff and the Class, purchased the Products believing they were beneficial and effective as claimed by Defendant when in fact they were not—a fact of which consumers could not reasonably have become aware.

121.   <u>Fraudulent</u>: A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

122.   As set forth herein, Defendant's representations and omissions about the quality, benefits, and effectiveness of the Products were and are false and likely to mislead or deceive the public because a significant portion of the general consuming public, acting reasonably in the circumstances, could be misled by Defendant's representations and omissions.

123.   Defendant profited from their sale of the falsely, deceptively, and unlawfully advertised and packaged the Products to unwary consumers.

124.   Defendant's conduct directly and proximately caused and continues to cause substantial injury to Plaintiff and the other Class members. Plaintiff and the Class have suffered injury-in-fact as a result of Defendant's unlawful conduct including but not limited to the damages as described above.

125.   Plaintiff and the Class also seek an order for and restitution of all monies from the sale of the Products, which were unjustly acquired through acts of unlawful competition.

### COUNT 6
### Unjust Enrichment
### (On Behalf of the National Class and the California Sub-Class)

126.   Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

127.   Plaintiff brings this claim against Defendant on behalf of herself, the National Class and the California Sub-Class (the "Classes").

128.    Plaintiff and the other Members of the Classes conferred benefits on Defendant by purchasing the Products.

129.    Defendant received the benefits to the detriment of Plaintiff and the other Members of the Classes because Plaintiff and the other Members of the Classes purchased a mislabeled product that is not what they bargained for and that did not provide the promised benefits.

130.    Defendant has been unjustly enriched in retaining the revenues derived from the purchases of the Products by Plaintiff and the other Members of the Classes. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling, marketing and advertising of the Products was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Classes, because they would have not purchased the Products otherwise.

131.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Classes for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Complaint, respectfully requests that the Court enter judgment as follows:

a.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class representative and Plaintiff's attorneys as Class Counsel;

b.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages, as applicable, in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.   For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses and costs incurred in bringing this lawsuit.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: December 8, 2020

Respectfully Submitted,

By: /s/ *Alex R. Straus*
Alex R. Straus, SBN 321366
**WHITFIELD BRYSON LLP**
16748 McCormack Street
Los Angeles, CA 91436
Telephone: (917) 471-1894
Facsimile: (310) 496-3176
alex@whitfieldbryson.com

Daniel K. Bryson*
J. Hunter Bryson*
**WHITFIELD BRYSON LLP**
900 W. Morgan Street
Raleigh, NC 27603
P.O. Box 12638
Raleigh, NC 27605
Dan@whitfieldbryson.com
Hunter@whitfieldbryson.com

Gary M. Klinger*
**MASON LIETZ & KLINGER LLP**
227 W. Monroe Street, Ste. 2100
Chicago, Illinois 60606
Phone: 202.640.1160
Fax: 202.429.2294
gklinger@masonllp.com

*Pro hac vice forthcoming*

*Attorneys for Plaintiffs and the Class*